IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFRED DIGIACOMO | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| TEAMSTERS PENSION FUND OF | : | |
| PHILADELPHIA AND VICINITY | : | NO. 04-1090 |

MEMORANDUM

LEGROME D. DAVIS, J.                                    October 5, 2006

Presently before the Court is Plaintiff's Petition for Attorney's Fees and Costs (Doc. No. 27), Defendant's Response in Opposition (Doc. No. 28), and Plaintiff's Reply thereto (Doc. No. 31).  For the reasons set forth below, Plaintiff's Petition is DENIED with respect to the request for attorney's fees and costs, and GRANTED with respect to prejudgment interest.

I.      PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The Plaintiff, Mr. DiGiacomo, filed his complaint in this matter on March 15, 2004, alleging that the Defendant, Teamsters Pension Trust Fund of Philadelphia and Vicinity ("Defendant" or "Fund") incorrectly computed his pension benefits as dictated under the Employee Retirement Security Income Act ("ERISA").  On July 29, 2004, this Court granted Defendant's Motion to Dismiss.[1]  Plaintiff timely appealed.

The Third Circuit reversed this Court's dismissal on October 14, 2005 and remanded the case to this Court.  See DiGiacomo v. Teamsters Pension Trust Fund, 420 F.3d 220 (3d Cir.

_____

[1]  Additionally, this Court denied Defendant's request for the imposition of Rule 11 sanctions on Plaintiff for engaging in meritless litigation.

2005).  Plaintiff petitioned in the Third Circuit for attorney's fees and costs relating to the appeal; the petition was denied.  DiGiacomo v. Teamsters Pension Trust Fund, 154 Fed. Appx. 312 (3d Cir. 2005).  Following remand, Defendant petitioned for certiorari in the Supreme Court, and sought from this Court a stay of proceedings to enforce the judgment pending resolution of its certiorari petition.  On December 29, 2005, this Court denied the stay and ordered Defendant to pay Plaintiff the costs taxed by the Third Circuit.  The Supreme Court denied certiorari on March 6, 2006.  Teamsters Pension Trust Fund v. DiGiacomo, 126 S.Ct. 1469 (2006).

In June 2006, pursuant to the Third Circuit's ruling, Defendant adjusted Plaintiff's pension payments to $1,812.48 per month, and made a one-time payment of $6,936.44 for all retroactive monies owed to Plaintiff from April 1, 2005, the date of Plaintiff's retirement, through May 2006.  Pl.'s Reply, Ex. 2.  On July 18, 2006, Plaintiff petitioned to this Court for attorney's fees and costs, as well as for prejudgment interest on the principal of the delayed benefits.  Defendant opposed the petition and Plaintiff replied.

II.   DISCUSSION

Plaintiff petitions this Court for an award of attorney's fees and costs in the amount of $24,548.76 "for services rendered upon remand" to this Court from the Third Circuit.[2]  See Pl.'s Pet.  Furthermore, Plaintiff seeks $700.00 in attorney's fees "for time expended to oppose Defendant's Rule 11 motion," Id., and prejudgment interest on the back benefits paid to him in June 2006, Pl.'s Reply.

---

[2]  As of August 11, 2006, in his Reply to Defendant's Response, Plaintiff requests compensation for $223.76 in costs and $24,325.00 in attorney's fees.  In his initial Petition filed on July 18, 2006, Plaintiff requested attorney's fees totaling $21,000.00 and costs of $215.53.

2

A.      Attorney's fees and costs under ERISA

In an ERISA action brought by an individual participant, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  There is no presumption in favor of granting fees and costs to prevailing plaintiffs.  Ellison v. Shenango Inc. Pension Bd., 956 F.2d 1268, 1275 (3d Cir. 1992).  In determining the propriety of fee awards under ERISA, courts must balance the following policy considerations: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position.  Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983).  While district courts have broad discretion in deciding whether a fee award is warranted, they must consider each of the Ursic factors in making such a determination.  Anthuis v. Colt Ind. Operating Corp., 971 F.2d 999, 1011 (3d Cir. 1992) (mandating district courts to consider each Ursic factor).  No factor is given any particular weight in the Ursic balancing analysis; courts may choose to weigh some factors more heavily than others depending on the particular factual circumstances at hand.  McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc., 33 F.3d 253, 258 (3d Cir. 1994); see also DiGiacomo, 154 Fed. Appx. at *2 (even without considering factors of ability to pay, deterrence, and benefit-to-others, finding that the first and fifth Ursic factors "so strongly militate against [an attorney's fee award] as to control our determination" to deny fees).

_Culpability or bad faith_

Bad faith usually implies a sinister purpose or ulterior motive.  McPherson, 33 F.3d at

256 (citing <u>Ford v. Temple Hosp.</u>, 790 F.2d 342, 347 (3d Cir. 1986)).  Culpability generally

refers to conduct that is "blameable; censurable; ... at fault; involving the breach of a legal duty

or commission of a fault."  <u>McPherson</u>, 33 F.3d at 257.  Culpable conduct requires more than

mere negligence, but a party is not culpable simply because he failed to prevail in the litigation.

<u>Id.</u>

Plaintiff presents several instances of conduct that he believes demonstrates Defendant's

culpability or bad faith:  (1) filing of a motion to stay enforcement proceedings in this Court; (2)

not paying costs taxed by the Third Circuit until Plaintiff compelled it to by motion; (3) seeking

certiorari in the Supreme Court; (4) not agreeing to stipulations in a timely manner such that

Plaintiff was forced to file a summary judgment motion in March 2006; and (5) delaying adjusted

payments to Plaintiff until three months following the denial of certiorari.  Pl.'s Pet. at 2; Pl.'s

Reply at 1-3.

Plaintiff highlights the fact that after the Third Circuit's decision, Defendant improperly

filed a motion for a stay of enforcement proceedings in this Court, instead of in the Court of

Appeals.  Presumably, the implication is that Defendant acted culpably in doing so because it

was aware that this Court is without power to issue the stay, but did so anyway as to cause

Plaintiff to expend additional time and resources in opposing the motion.  However, Defendant

certainly did not act culpably or with bad faith in seeking *a* stay, as it undoubtedly had the right

to seek a stay of the court of appeals mandate, pending its certiorari petition, by applying to the

Third Circuit.  <u>See</u> Fed. R. App. P. 41(a)(2).  Had Defendant done so correctly, Plaintiff would

still presumably have spent time opposing that motion in the Third Circuit, instead of in this

Court.  Therefore, as Plaintiff was not prejudiced by the error, nor is there any support for the

4

contention that the error resulted from anything more than negligence, this Court finds that Defendant's conduct in this respect is not "blameable" or "censurable."

In addition, Plaintiff fails to explain how the events leading up to Defendant's payment of costs taxed by the Third Circuit in January 2006 demonstrates its culpability.  While Defendant's payment did come after this Court's orders to that effect, there is nothing to suggest that Defendant's failure to pay prior to the orders was culpable.  Cf. Porcellini v. Strassheim Printing Co., Inc., 578 F. Supp. 605, 615 (E.D. Pa. 1983) (defendant's failure to provide documents despite plaintiff's *explicit request* for them showed culpability).  Moreover, this Court rejects Plaintiff's contention that Defendant's certiorari petition was "highly speculative."  Pl.'s Reply at 3.  Given the importance of ERISA's break-in-service rules and the circuit split that has emerged on the issue, Defendant certainly did not act culpably in petitioning for certiorari in the Supreme Court in hopes of definitively resolving the question.  See DiGiacomo, 154 Fed. Appx. at *1-*2 (denying Plaintiff's request for attorney's fees and noting the "significant merit" of the Fund's legal position and the "divergence of opinion" on the issue).

Nor does this Court find that Plaintiff's filing of his summary judgment motion on March 31, 2006 was the result of Defendant's culpable conduct.  It appears that Defendant counsel did not receive the proposed stipulations from Mr. DiGiacomo until March 28, 2006, and thus could not get the necessary approval for the stipulations before the March 31, 2006 deadline.  Def.'s Resp. at 2.  Defendant then proposed jointly requesting an extension of time from this Court in order to resolve the case without resorting to the filing of dispositive motions, but Plaintiff counsel apparently did not feel such a request was appropriate.  Def.'s Resp., Ex. 4.  However, this Court is unable to conclude based on this that Defendant is to blame for Plaintiff having to

5

file a summary judgment motion.

Lastly, Plaintiff contends that the approximate three-month delay between the time the Supreme Court denied the Fund's certiorari petition and the time Mr. DiGiacomo began receiving his adjusted payments evinces culpability.  While it is true that an inexcusable and inordinate delay in the performance of a duty may demonstrate bad faith or culpability, there is simply no showing here that the delay suffered by Plaintiff here rose to such a magnitude.  While Defendant's actions were certainly not a model of administrative efficiency, this Court nevertheless concludes, especially given the size of the Fund[3] and that the Fund was in the process of moving its operations from Pennsylvania to New Jersey during March and April of 2006, the administrative realities of the situation simply do not support Plaintiff's assertion that the delay was the result of Defendant's culpable conduct.

Certainly, there is a fine line between zealously advocating to protect one's legal interests and engaging in obstructive conduct so as to increase the financial burdens of litigation on one's opponent, but Defendant's actions in this case have not come close to toeing that line.  Therefore, based on the foregoing discussion, this Court finds that the first Ursic factor weighs against an award of attorney's fees and costs to Mr. DiGiacomo.

*Ability to satisfy an award*

Plaintiff argues that Defendant has net assets of over one billion dollars and thus is easily able

---

[3]  According to the Fund's website, Defendant's pension fund has more than 10,500 active participants and it administers benefits to over 12,900 retirees and surviving spouses every month.  Available at www.teamsterfunds.com/About%20Us/history_of_the_funds.htm.

6

to satisfy an award of attorney's fees.[4]  Defendant does not contend that satisfying an attorney's fees

award in this case will be difficult or will otherwise cause financial hardship; it only states that

although the Fund is "in compliance with its funding requirements," it has "significant liability in

the form of payment of future benefits."  Def.'s Resp. at 6.  Since Defendant does not dispute its

ability to satisfy an award, this Court finds that this Ursic factor weighs in favor of Plaintiff.[5]  See

Monkelis v. Mobay Chemical, 827 F.2d 935, 937 (3d Cir. 1987) (cannot conclude party lacks ability

to pay since he never argued that he would be unable to satisfy the contemplated award).

*Deterrent effect*

As the Third Circuit has noted, the Ursic factors are intended to further ERISA's policy goals

of remediation and deterrence.  Monkelis, 827 F.2d at 1274.  Even if a party's behavior falls short

of bad faith conduct, courts should still consider "whether it would serve the objectives of ERISA

to award counsel fees in an effort to deter conduct of the kind in which [the non-prevailing party]

engaged."  McPherson, 33 F.3d at 258.  Here, Plaintiff claims that a fee award "can be expected to

deter plans from unduly delaying payments to participants and beneficiaries," Pl.'s Pet. at 3, and

"similar, wrongful denials of benefits and to encourage plans to correct faulty decisions earlier in the

litigation process," Pl.'s Reply at 3.

However, to the extent that the Third Circuit observed that the Fund "reasonably relied on

past decisions from our Court in enforcing its pre-ERISA break-in-service provisions," it is clear that

---

[4]  Without deciding the issue, this Court nevertheless notes that looking at a pension fund's net assets without considering its accrued funding obligations does not seem to be the best indication of the particular fund's ability to pay.

[5]  Defendant is correct, however, that Mr. DiGiacomo's financial status is irrelevant to this analysis at hand.  Ellison, 956 F.2d at 1277 (district court erred in considering *prevailing* party's relative ability to pay in determining attorney's fee award).

Defendant's initial denial of benefits to Mr. DiGiacomo was not "wrongful." <u>DiGiacomo</u>, 154 Fed. Appx. at *2. Furthermore, since the delay in payments in this case was neither inexcusable nor inordinate, but rather was likely attributable to delays inherent in the administration of a large pension fund and those in litigation in general, no deterrence goals would be served in the award of fees in this case.

<u>Benefit conferred to others</u>

Plaintiff's litigation clearly benefitted other retirees – not only those covered by the Defendant's pension fund, but all other similarly-situated retirees within the Third Circuit's jurisdiction. However, the brunt of this benefit was conferred by Mr. DiGiacomo in his taking an appeal of this Court's dismissal to the Third Circuit. Since the Third Circuit has already denied Plaintiff's petition for fees in connection with his appeal, this Court is restricted to considering how Plaintiff's conduct following remand benefitted others. Being so limited, this Court fails to see, nor has Plaintiff explained, how Plaintiff's post-remand litigation has conferred a benefit to similarly-situated retirees. Therefore, this factor weighs against the Plaintiff.

<u>Relative merits of the parties' positions</u>

Again, this Court's consideration of this factor is limited to the parties' conduct following remand. As discussed earlier, Defendant's actions before this Court were not unreasonable, even if it did commit legal error in filing its motion for a stay in the wrong court. Furthermore, this Court cannot say that any other position taken by the Fund during the relevant period was meritless in general or less meritorious relative to that of the Plaintiff. As such, the last <u>Ursic</u> factor also weighs against an award.

In conclusion, the only <u>Ursic</u> factor weighing in Plaintiff's favor is the Fund's undisputed

ability to satisfy an award while the remaining factors all counsel against such an award.  Therefore, based on a careful consideration of the <u>Ursic</u> factors viewed in light of ERISA's policy goals, this Court concludes that Plaintiff's petition for attorney's fees and costs should be denied.

      B.      Attorney's fees and costs in opposing Rule 11 sanction

In addition to seeking attorney's fees and costs for services rendered following the Third Circuit's remand of this case, Plaintiff also seeks an award of $700.00 for reasonable expenses and fees incurred in opposing Defendant's Rule 11 motion.[6]  Rule 11 allows the court, in its discretion, to award counsel fees and expenses to prevailing parties in order to discourage abusive and baseless litigation.  Fed. R. Civ. P. 11; <u>Doering v. Union County Board</u>, 857 F.2d 191, 194 (3d Cir. 1988).  However, courts have repeatedly cautioned that such sanctions should only be prescribed in the "exception circumstance" where a motion or claim is "patently unmeritorious or frivolous."  <u>Doering</u>, 857 F.2d at 194 (quoting <u>Gaiardo v. Ethyl Corp.</u>, 835 F.2d 479, 483 (3d Cir. 1987)); <u>see, e.g.</u>, <u>Barnes Found. v. Twp. of Lower Merion</u>, 242 F.3d 151, 168 (3d Cir. 2001) (urging courts to exercise the "utmost restraint" in awarding Rule 11 costs and fees); <u>Pensiero v. Lingle</u>, 847 F.2d 90, 99 (3d Cir. 1988) (sanctions only warranted in exceptional cases).  While it is generally the case that courts encounter the Rule 11 inquiry in the context of a defendant's petition for sanctions, the filing of a Rule 11 motion itself can also serve as the basis for sanctions.  <u>Patelco Credit Union v. Sahni</u>, 262 F.3d 897, 913 (9th Cir. 2001).

Based on these well-settled standards, this Court concludes that Plaintiff is not entitled to an

---

[6]  In conjunction with its June 4, 2004 Motion to Dismiss Plaintiff's Complaint, Defendant also asked this Court to sanction Plaintiff for engaging in litigation despite being advised of contrary circuit precedent.  This Court granted Defendant's Motion to Dismiss, but did not grant Rule 11 sanctions against Plaintiff.

award of fees and costs incurred as a result of successfully opposing Defendant's Rule 11 motion. Presumably, Defendant believed that Plaintiff's claims were foreclosed by prior Third Circuit precedent enforcing pre-ERISA break-in-service provisions. See DiGiacomo, 154 Fed. Appx. at *2 (noting that Defendant "reasonably relied" on past Third Circuit decisions in denying benefits). Although Defendant's Rule 11 claim was on questionable legal footing, this Court cannot say that it was so patently frivolous or abusive as to warrant the imposition of the exceptional remedy requested by Plaintiff.

C.      Prejudgment interest

The award of prejudgment interest on unpaid or delayed benefits in ERISA cases is within a district court's equitable discretion. Fotta v. Tr. of United Mine Workers of Am., Health & Ret. Fund of 1974, 165 F.3d 209, 214 (3d Cir. 1998); Anthuis, 971 F.2d at 1010. Prejudgment interest is presumptively appropriate absent exceptional or unusual circumstances that would render the award inequitable, such as a claimant's bad faith or dilatoriness. Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 208 (3d Cir. 2004). Generally, where the amount of underlying liability is reasonably ascertainable and the relief granted would otherwise fall short of fully compensating the claimant for his deprivation, prejudgment interest should be awarded. Anthuis, 971 F.2d at 1010 (citing Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir. 1986)). Such an award compensates claimant for his loss of the use of money that is his and ensures that the fiduciary is unable to benefit unfairly from the "inherent delays of litigation." Anthuis, 971 F.2d at 1010; Moore v. CapitalCare, Inc., 2006 WL 2472149, at *6 (D.C. Cir. 2006).

Plaintiff requests prejudgment interest on the principal of the back benefits paid to Mr. DiGiacomo from the time he retired in April 1, 2005 to June 1, 2006, when he received a retroactive

payment for the amounts additionally adjudged to be owed to him as a result of the Third Circuit's decision. In this case, the amount of the underlying liability – the delayed benefits – is undisputed, and there is no suggestion that Mr. DiGiacomo acted in bad faith or was dilatory in pursuing his claims. Furthermore, Plaintiff did not receive the entirety of the pension benefits that he was entitled to until June 1, 2006, and thus was denied use of his money in the interim. Even if the Fund did not act wrongfully in withholding the increased benefits, an award here would compensate Mr. DiGiacomo for this loss and would further mitigate some of the burdens of litigation suffered by individual litigants like Mr. DiGiacomo whose actions confer benefits to other plan members. Therefore, as no extraordinary circumstances are present in this case, prejudgment interest is presumptively appropriate, and this Court will exercise its equitable discretion and award Plaintiff prejudgment interest on the appropriate back benefits for the period of April 1, 2005 to June 1, 2006.

All that remains is to decide the appropriate rate of interest for such an award. Unless an interest rate is prescribed by statute, district courts have discretion in setting the particular rate for calculating prejudgment interest purposes. Brock v. Richardson, 812 F.2d 121, 127 (3d Cir. 1987). Since the Third Circuit has not indicated what the appropriate prejudgment interest rate should be in the ERISA context, other courts in the circuit have looked to 28 U.S.C. § 1961 in fashioning their awards. Skretvedt, 372 F.3d at 208 (quoting Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 131-32 (3d Cir. 2000)) (recognizing that the Third Circuit has "not offered extensive guidance" on the issue); see, e.g., Tomasko v. Weinstock, P.C., 2006 WL 2562741, at *7 (M.D. Pa. Sept. 5, 2006) (looking to 28 U.S.C. § 1961); Russo v. Abington Mem'l Hosp. Healthcare Plan, 257 F. Supp. 2d 784, 787 (E.D. Pa. 2003) (same); Holmes v. Pension Plan of Bethlehem Steel Corp., 1999 WL 179794, at *2-*3 (E.D. Pa. March 24, 1999) (same). Section 1961 provides that "interest

11

shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."   28 U.S.C. § 1961(a). Analogizing this dictate to the instant situation, this Court finds that prejudgment interest in this case should be calculated by taking an average of the relevant one-year Treasury yields during the fourteen-month prejudgment period between April 2005 and June 2006, and applying that rate to the lump-sum retroactive benefit of $6,936.44 that Mr. DiGiacomo received for the same period.  Such a rate should yield a fair approximation of Plaintiff's loss.  See Holmes, 1999 WL 179794, at *3 (approving use of average yield lest "the complexity of different interest rates to be applied [over a prejudgment period] makes the computation intractable"); Pierce v. Am. Waterworks Co., Inc., 683 F. Supp. 996, 1001-02 (W.D. Pa. 1988) (using average of § 1961 rates over prejudgment period for delayed ERISA awards).  Based on this Court's calculations, using the average rate of 4.15%,[7] total prejudgment interest owed to Mr. DiGiacomo on his delayed benefits is $287.52.

## III.   CONCLUSION

In conclusion, this Court finds that Plaintiff is not entitled to attorney's fees and costs, but that an award of prejudgment interest in the amount of $287.52 is warranted based on equitable considerations.  An appropriate order follows.

---

[7]  The relevant one-year Treasury yields were:  04/2005, 3.32%; 05/2005, 3.33%; 06/2005, 3.36%; 07/2005, 3.64%; 08/2005, 3.87%; 09/2005, 3.85%; 10/2005, 4.18%; 11/2005, 4.33%; 12/2005, 4.35%; 01/2006, 4.45%; 02/2006, 4.68%; 03/2006, 4.77%; 04/2006, 4.90%; 05/2006, 5.00%.  Available at http://www.federalreserve.gov/releases/h15/data.htm.